**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

RUSSELL SCRUGGS,
LEE BARE and JOSEPH YOUNG,

                    Plaintiffs,

v.                                          CIVIL  ACTION  NO. 3:10-0789

SKYLINK LTD.,

                    Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending are the parties' cross-motions for summary judgment.  For the reasons that follow, the Court **GRANTS** the defendant's motion for summary judgment [Doc. 39], and **DENIES** the plaintiffs' motion for summary judgment. [Doc. 45]

**I.      Facts and Procedural History**

On June 3, 2010, plaintiffs Russell Scruggs, Lee Bare, and Joseph Young ("Plaintiffs") filed the instant action against defendant Skylink, LTD ("Skylink") bnon behalf of themselves and others similarly situated, asserting individual, collective, and class-action claims under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 206, 216(b) and the West Virginia Payment and Collection Law (the "WPCL"), W. Va. Code § 21-5-1, *et seq*.

Skylink is a limited liability company that provides satellite installation services for DirectTV in West Virginia and several surrounding states.  It hires installation and repair technicians to conduct the installations.  Typically, a customer seeking satellite internet or television services

-1-

contacts DirectTV.  If the customer decides to place an order within Skylink's region, Skylink's routing department retrieves a corresponding work order from DirectTV.  Then, its routing department distributes the work order to field technicians based upon, among other factors, the location and the technician's skill set.

Skylink does employ some field technicians.  However, it claims that approximately 50% of its installers are independent subcontractors, working under the terms of standardized service agreements.  Under the service agreements, a subcontractor can log into Skylink's computer system and obtain work orders made available by DirectTV for any particular workday.  The subcontractor notifies Skylink if he has accepted an order, and thereafter confirms whether the order has been completed.  Subcontractors are paid on a "points system" whereby certain points with monetary value are assigned based upon the type of service provided.  Thus, jobs that are more difficult or time-consuming are typically assigned more points.

Theoretically, there are important differences between subcontractors and general installation employees.  For instance, subcontractors may hire their own employees to assist in installations, and compensate those employees under the umbrella of their own businesses.  They provide their own liability insurance, and may elect to provide additional services to customers beyond basic installations.

Plaintiffs all perform—or did perform—installation services for Skylink.  They allege that Skylink has violated the FLSA and WPCL by improperly classifying them as independent contractors during their service periods for the purpose of avoiding the minimum wage and overtime provisions of those statutes.  As a result, they claim that they have not received overtime and minimum wage compensation for many of the hours they worked.

## II.    Discussion

Skylink and Plaintiffs have filed cross-motions for summary judgment on each of the three counts asserted in the complaint.  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the Court generally will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

In Skylink's Motion, it argues first that, under the FLSA, Plaintiffs are properly classified as independent contractors, and are therefore barred from bringing an action to recover overtime and minimum wage compensation.[1]  Second, Skylink argues that Plaintiffs may not recover for claims asserted under the WPCL because Skylink is not covered by the contested provisions of that statute, and because the FLSA is Plaintiffs' exclusive remedy.  Skylink also contends that Plaintiff Joseph Young is not classified as an independent contractor, and is therefore an improper party to the collective and individual claims brought in this action.  Finally, Skylink claims that Plaintiff Young's claims are barred by the applicable statute of limitations.  The Court addresses each

---

[1] As a general matter, Skylink's motion for summary judgment on the grounds that the FLSA's protections do not apply to independent contractors concerns only the claims filed by Plaintiffs Russell Scruggs and Lee Bare on behalf of themselves and others similarly situated. Skylink advances a separate argument against Plaintiff Young's ability to recover.  The Court addresses those grounds in Section II.C.  In this section, however, all references to "Plaintiffs" should be assumed to apply to Plaintiffs Scruggs and Bare unless otherwise noted.

-3-

argument in turn.

### A. Classification

The FLSA's broad protections apply only to employees. *See* 29 U.S.C. § 203(e)(1). "[T]he FLSA defines 'to employ' as 'to suffer or permit to work,' 29 U.S.C. § 203(g), and an 'employer' as 'any person acting . . . in the interest of an employer in relation to an employee,' 29 U.S.C. § 203(d)." *See Chao v. Mid-Atlantic Installation Servs., Inc.*, No. 00-2263, 2001 U.S. App. LEXIS 14804, at *3-4 (4th Cir. July 2, 2001). Courts may determine whether an individual is an employee or an independent contractor by looking to the "economic reality" of the relationship between the individual and a putative employer. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727-28 (1947). In making this determination, the Court should consider the six so-called "*Silk*" factors[2]:

1. The degree of control which the putative "employer" has over the manner in which the work is performed;
2. The opportunities for profit or loss dependent on the managerial skill of the worker;
3. The worker's investment in equipment or material, or his employment of other workers;
4. The degree of skill required for the work;
5. The permanence of the working relationship; and
6. Whether the service rendered is an integral part of the "employer's" business.

*Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667, 671 (D. Md. 2000) (discussing *Heath v. Perdue Farms, Inc.*, 87 F. Supp. 2d 452, 457 (D. Md. 2000)). It is the plaintiff's burden to establish each factor, and no single factor is dispositive in the decision calculus. *See Benshoff v. City of Va. Beach*, 180 F.3d 136, 140-41 (4th Cir. 1999). Provided that there are no disputes of material historical facts, summary judgment may be appropriate on the question of

---

[2] The *Silk* factors derive from the Supreme Court's decision in *United States v. Silk*, 331 U.S. 704 (1947). *See Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006).

whether the plaintiffs were "employees" or "independent contractors." *See Schultz*, 466 F.3d at 304; *Werner v. Bell Family Med. Ctr., Inc.*, No. 3:09-cv-0701, 2011 U.S. Dist. LEXIS 28493, at *15-16 (M.D. Tenn. March 18, 2011). This is true because the question of whether an employment relationship is formed between an individual and an alleged employer is a question of law. *See Schultz*, 466 F.3d at 304 ("The ultimate conclusion as to whether a worker is an employee or independent contractor under the FLSA presents a legal question . . . .").

### 1.     The Nature and Degree of Control Exercised by Skylink

Under the first *Silk* factor the Court must consider the extent to which Skylink had control over Plaintiffs of the type traditionally exerted by an employer over its employees. *See Schultz*, 466 F.3d at 304. Courts, in evaluating this factor, have considered such details as "whether workers may choose how much and when to work, . . . whether they must wear uniforms, and how closely their work is monitored and controlled by the purported employer." *Berrocal v. Moody Petroleum, Inc.*, No. 07-225492009, 2009 U.S. Dist. LEXIS 17138, at *17 (S.D. Fla. Feb. 22, 2009). Plaintiffs contend that Skylink exercised control sufficient to establish an employer/employee relationship under the FLSA. Plaintiffs rely heavily on the Skylink Independent Contractor Agreement and a verified affidavit filed by Bill Holstein, one of Skylink's former West Virginia plant managers.

Generally, "[w]here putative employers provide specific direction for how workers, particularly low-skilled workers, are to perform their jobs, courts have weighed the control factor in favor of employee status." *See Montoya v. S.C.C.P. Painting Contrs., Inc.*, 589 F. Supp. 2d 569, 579 (D. Md. 2008).[3] All Skylink contractors must perform to DirectTV's specifications, and use the

---

[3] As a general matter, Plaintiffs do not engage in "low-skilled" work. Other courts have found, on very similar facts, that television and internet installers engage in work that can be classified as a skilled trade. *See Herman*, 164 F. Supp. 2d at 675; *see also infra* Section II.A(4).

type of parts required for its systems.  Def.'s Mot. Summ. J. Ex. D, at 1, No. 39-4 (hereinafter, "Subcontractor Agreement").  They must also report on the status of issued orders.  But Plaintiffs incorrectly contend that these facts suggest that they were employees.  Requiring installers to meet installation specifications for a customer, and to provide periodic updates on an order's status, "is entirely consistent with the standard role of a contractor who is hired to perform highly technical duties."  *See Herman*, 164 F. Supp. 2d at 672 (finding as much).  There is nothing in the facts suggesting that there were any underlying material differences between Skylink's requirements and those one would ordinarily find at the core of an installation contract.

Plaintiffs intimate that Skylink had full control of their schedules, and required them to work at specified times.  However, Plaintiffs' depositions indicate that they were free to take as much time off as they desired, *see* Def.'s Mot. Summ. J. Ex. C, at 4, No. 39-3 (Bare deposition; noting that he would take a week every November to go hunting, and no one ever told him that there was a limit on the amount of days he could request off of work), and suggest that they could refuse work orders, *see id.* (noting that "[i]f you miss[ed] work . . . then you just don't have a job").  Plaintiffs counter that they were threatened with termination if they did not accept work orders, but this does not mean that they were employees as a matter of economic reality, particularly since Plaintiffs testified that they had refused work orders given by Skylink without penalty.  *See* Def.'s Mot. Summ. J. Ex. B, at 16, No. 39-2 (Scruggs deposition; "No, I was not denied [work orders], but I was threatened" [that I would lose routes if I did deny them]).  In a similar vein, Plaintiff Bare testified that, if he was unable to make it to a job site, he could communicate with the customer and Skylink in order to have the appointment rescheduled.  *Id.* Ex. C, at 14, No. 39-3. The Subcontractor Agreement provides

---

Plaintiffs, indeed, concede as much.

explicitly that Skylink must have advanced notice of a reduction in work capacity because it relies on the regional distribution of its subcontractors for purposes of service coverage. *See* Subcontractor Agreement, at 5. If a subcontractor fails to notify Skylink of his work capacity, Skylink will necessarily be limited in its quality control process. Skylink's business depends upon prompt, efficient service.

This type of control, which allows Skylink to ensure work orders are performed on time, is different than the type of control an employer traditionally exercises over its employees. Although Plaintiffs offer some evidence that they were required to notify Skylink if they were not going to be available to take work orders, Plaintiffs admit they were allowed significant flexibility when advance notice was given. For example, Plaintiff Scruggs decided not to work on Mondays in order to attend classes. Def. Br. in Supp. Mot. Summ. J., No. 40, at 7. Plaintiffs Scruggs and Bare both left their contractual relationships with Skylink for several months, then returned to again work as independent contractor installers. *Id.* This transience is evidence that Skylink did not exercise an a high level of control in the installer-Skylink relationship.

Rather, the arrangement that Skylink contracted for with the plaintiff installers was different than the working relationship Skylink maintained with its employee installers. Plaintiffs offer no evidence that they were required to report to Skylink offices for each shift, nor were they required to account for any time not spent on assigned work orders.[4] Skylink purposefully chooses to hire independent contractors to gain flexibility: contractors can handle spikes in demand for installations, and cover areas where there are too few installations to occupy a full-time employee installer. Def.

---

[4] *Compare Lang v. DirectV*, No. 10-1085, 2011 WL 2709886 at *4 (E.D. La. Jul. 12, 2011) (disputed issue of material fact as to FLSA employee status where, among other requirements, cable installers were required to report to company office daily at 7:00am).

Br. in Supp. Mot. Summ. J., No. 40, at 3-4.  As described above, the plaintiff installers likewise enjoyed greater flexibility as a result of this contractual arrangement.  As a matter of economic reality, the relationship between Skylink and the plaintiff installers was different than a traditional employer-employee relationship.  *See Schultz*, 466 F.3d at 304.  The amount of control exercised by Skylink over the independent contractors in scheduling and work management thus favors a finding of independent contractor status.

Plaintiffs next contend that Skylink's control over how they performed installations supports a finding of employee status.  Plaintiffs claim that Skylink required them to provide their own equipment, and to use particular parts on jobs.  In addition, they claim that they had to finance their own travel expenses.  The majority of these issues are addressed in Section II.A(3), *infra*, but suffice it to say here that they do not, as Plaintiffs suggest, lead to an inference of an employment relationship.  The fact that Plaintiffs provided their own equipment and transportation suggests that they were independent contractors, not employees.  *See Herman*, 164 F. Supp. 2d at 675.  This is because employees are not generally required to bear the latter costs.  Moreover, again, it is entirely consistent with a general contractor/subconcontractor relationship to require the use of specialized parts.  After all, DirectTV is selling a specialized product, and its satellite receiver units may not be universally compatible.  Plaintiffs offer no other evidence suggesting otherwise.  Their attempts to mask these issues by asserting that they were "required" to provide their own equipment and finance their own travel expenses do not explain how such a mandate made them "employees."

Plaintiffs also claim that they were required to wear uniforms and badges at the direction of DirectTV, and that they were required to be groomed in a particular fashion.  As to the former point, "requiring [i]nstallers to wear uniforms and ID badges identifying themselves . . . does not make

-8-

them employees . . . because the requirement does not affect the economic reality of the relationship." *Herman*, 164 F. Supp. 2d at 673.  Furthermore, the Subcontractor Agreement states explicitly that a subcontractor's "hair, beard, and dress styles are at [his] sole option, but as a professional, . . . [DirectTV] expects you to be clean, well groomed and presentable." Subcontractor Agreement, at 2.  Far from a mandate, this statement is a mere expression of Skylink's hopes for the professional conduct of its subcontractors.  It does not represent control.

Plaintiffs also intimate that Skylink essentially engaged in "back-charging." That is, it would withhold or deduct payments for failure to meet DirectTV's specifications.  In the same vein, they point out that the Subcontractor Agreement required them to "guarantee" the quality of their work for up to one year, or otherwise be subject to Skylink for repair work.  However, back-charging is not uncommon in contractual relationships.  In *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667 (D. Md. 2000), the court addressed virtually identical facts.  In that case, the plaintiffs were cable installation technicians seeking to be classified as employees.  *See id*. at 669-70.  In that endeavor, they argued that their putative employer had the right to withhold money if work was not done to certain specifications.  *See id.* at 673.  The court rejected the argument:

> [I]n most construction contracts a certain percentage is generally withheld from each payment pending complete performance of the contract and satisfactory completion of the "punch list" items.  If complete and acceptable performance is not made, the full contract amount is not paid.

*Id.*  Here, for the same reasons, Plaintiffs had to comply with the industry-unique specifications of DirectTV, and to warrant any defects in their own performance.  This is entirely consistent with independent contractor status, and there is nothing on the facts Plaintiffs offer that would suggest

-9-

any greater measure of control.[5]

Additionally, it is uncontested that Skylink does not provide health insurance, liability insurance, automobile insurance, workers compensation, or vacation or holiday pay to individuals it classifies as subcontractors, while these benefits are generally provided to its employees.  This fact militates in favor of a finding of independent contractor status.

Finally, Skylink contends that there is no evidence that Plaintiffs were dependent upon it for its facilities.  Moreover, it claims that, while Plaintiffs were technically required—in accordance with the Subcontractor Agreement—to attend meetings from time to time, these meetings were only for "general information purposes relevant/to [the s]ubcontractor's services and/or [the] final end product."  *See* Subcontractor Agreement, at 7.  This picture is painted very differently by Plaintiffs.  Namely, Mr. Holstein's affidavit suggests that meetings were held *weekly*, and the failure to attend would subject one to discipline.[6]  Plaintiff Scruggs' testimony confirms that contractors could be penalized for failing to attend the meetings by receiving informal write-ups and being precluded from taking routes on the following days.  *See* Pls.' Mem. Supp. Mot. Summ. J. Ex. A, at 15, No. 46-1.  But, on balance, these facts do not tend to suggest a greater degree of behavioral control.

---

[5] Similarly, Plaintiffs also claim that Skylink required advanced notice of absence, and kept apprised of where Plaintiffs were.  Again, for the same reasons noted in this section, this does not necessarily imply control.  Given the nature of the job, there is a heightened interest for customers to be serviced expeditiously and efficiently.  *See Herman*, 164 F. Supp. 2d at 674.

[6] Plaintiffs rely on the Holstein Affidavit to establish that there are material issues of disputed fact in this case.  However, Mr. Holstein's affidavit is of weak significance.  Holstein left employment with Skylink in 2007, and the affidavit was procured in July 2011, for the purpose of supporting Plaintiffs' summary judgment motion.  Although the affidavit does not, as Skylink contends, rise to the level of being a "sham affidavit," it is insufficient to create a material issue of disputed fact in this case because it is conclusory, and contradicts in part the parties' own deposition testimony from February 2011.

Plaintiff Scruggs appeared to concede that the "write-ups" he was given were "breach-of-contract" notifications.  *See id.* Ex. A, at 15, No. 46-1.  Under the standard Subcontractor Agreement, subcontractors "agree[] to attend meetings  . . . from time to time . . . for general information purposes relevant/to" the services provided.  Subcontractor Agreement, at 7.  Failure to attend these meetings could be deemed by Skylink as the subcontractor's breach of the agreement.  Most importantly, however, there is evidence that Plaintiffs missed these meetings, and still received work orders thereafter. *See* Def.'s Mot. Summ. J. Ex. C, at 15, No. 39-3.  Even granting Plaintiffs the most favorable inference on this issue, the Court still finds that no reasonable trier of fact could take these issues in context with the undisputed facts, and conclude that Plaintiffs were employees.

### 2.    Plaintiffs' Opportunities for Profit or Loss

Under the second factor, the Court must consider whether Plaintiffs could control their own opportunities for profit or loss.  The extent to which an individual is able to "generate more money based on skill and hard work" may tend to establish independent contractor status.  *See Herman*, 164 F. Supp. 2d at 674.

Plaintiffs controlled their own profits and losses based upon the amount of work they agreed to accept.  *See, e.g.*, Def.'s Mot. Summ. J. Ex. B, at 8, 16, No. 39-2 (Scruggs Deposition; noting that he continued to receive work orders even after times he failed to run his routes).  However, it is noteworthy that Plaintiffs were obviously dependent upon Skylink for work insofar as Skylink was the primary installation provider for DirecTV in their regions.  Their income primarily derived from DirecTV's order log, and Skylink dictated the extent of the work that was given out.  Thus, "[b]ecause the [i]nstaller's opportunity for profit or loss is curtailed to only that limited extent by dependence on [Skylink], this factor does not strongly tip the scales one way or the other." *Herman*,

164 F. Supp. 2d at 675.

### 3. Investment in Equipment or Other Material and Plaintiffs' Employment of Other Workers

The third *Silk* factor requires the Court to consider the "worker's investment in equipment or materials required for the task, [and] his employment of other workers." *Schultz*, 466 F.3d at 308. This factors weighs in favor of finding independent contractor status as it is undisputed that Plaintiffs were responsible for providing their own work equipment and vehicles. This is a compelling indication that Plaintiffs were not employees. *See, e.g.*, *Freund v. Hi-tech Satellite, Inc.*, No. 05-14091, 2006 U.S. App. LEXIS 13492, at *2-4 (11th Cir. May 31, 2006) (affirming district court finding of an independent contractor relationship where putative employee procured all necessary equipment to perform required installations on his own).

The Subcontractor Agreement also permits contractors to hire their own helpers in a manner consistent with their own needs. *See* Subcontractor Agreement, at 4. Similarly, it requires Plaintiffs to pay their own liability insurance premiums and provide workers compensation. Plaintiffs are not entitled to receive reimbursement from Skylink for any of the costs associated with hiring employees. Plaintiffs Scruggs and Bare testified in depositions that they retained other individuals to assist them in providing installation services. *See, e.g.*, Def.'s Mot. Summ. J. Ex. B, at 9, No. 39-2 (Scruggs deposition); *id.* Ex. C, at 6, No. 39-3 (Bare deposition). Alternatively, Plaintiff Young, who was classified as an employee, was disciplined after it was discovered that his wife had eaten lunch with him in a company truck. *See id.* Ex. F, at 39-6. Contrasting his treatment with that of Plaintiffs Scruggs and Bare, the Court believes that this factor supports a finding of independent

contractor status for the former individuals.[7]

### 4.     The Degree of Skill Required

Under the fourth factor, the Court must consider the extent to which the individual's work is a particular skilled trade. *See id.*; *Freund*, 2006 U.S. App. LEXIS 13492, at *5. As noted, the Court believes there is a sufficient basis on which to conclude that Plaintiffs' trade requires specialized skill. As the court in *Herman* reasoned, "[t]he skills involved in cable installation and service are akin to carpentry and electrical work." 164 F. Supp. 2d at 675. Workers in these trades—including Plaintiffs—are traditionally designated as independent contractors.[8] Thus, this factor weighs in favor of a finding that Plaintiffs were also independent contractors.

### 5.     The Permanence of the Working Relationship

The fifth factor focuses on the substance and permanence of the working relationship between a putative employer and the worker. *See Schultz*, 466 F.3d at 306. "The more permanent the relationship, the more likely the worker is to be an employee." *Id.* Further, greater exclusivity may imply an employment relationship. *See Herman*, 164 F. Supp. 2d at 676 (suggesting as much in evaluating alternative arguments on this issue).

In their motion for summary judgment, Plaintiffs briefly address this issue, but do not contest

---

[7] The Court notes that Mr. Holstein's affidavit gives a bare assertion that any helpers would have to be approved by Skylink. However, this statement is unconfirmed in the evidence, and contradicted by Plaintiffs' own testimony. *See, e.g.*, Def.'s Mot. Summ. J. Ex. B, at 9, No. 39-2 (Scruggs deposition; noting that he employed one helper and paid the helper directly); *id.* Ex. C, at 6, No. 39-3 (Bare deposition; noting that he hired his girlfriend's son-in-law to help him on job sites without any need for approval from Skylink).

[8] Plaintiffs both have higher-level educational training. Plaintiff Scruggs has two years of computer engineering training at West Virginia University ("WVU") and was an armament specialist in the U.S. Air Force for many years. Plaintiff Bare has a Bachelors Degree in electrical/mechanical engineering from WVU.

the fact that they had previously accepted work with other entities.  Plaintiff Scruggs, for instance, stated that he provided satellite dish installations for non-Skylink or DirectTV customers.  *See* Def.'s Mot. Summ. J. Ex. B, at 12-13, No. 39-2  (noting, in part, that he installed dishes for Dish Network on occasion).  Moreover, they concede that they provided services—for which they were separately compensated—that went beyond those which are available through Skylink.  *See, e.g.*, *id.* Ex. B.  The Holstein affidavit states that independent installers could only perform extra work for a customer if it was approved by Skylink.  However, Plaintiffs both testified that each returned to work at customers' homes on non-Skylink hours in order to perform extra work.  *See* Def.'s Mot. Summ. J. Ex. B, at 12, No. 39-2; *id.* Ex. C, at 8, No. 39-3.  While there is some indication that Skylink provided pricing guides for extra work, there is no indication that Plaintiffs were required to remit any income back to Skylink for work that was not part of the core of Skylink's underlying standard installation service.  *Cf. id.* Ex. B, at 13, No. 39-2 (noting that contractors could not charge for standard services such as the installation of pole mounts because "that was on DirectTV side").

In addition, Plaintiffs contend that they were prohibited from taking positions with Skylink's "competitors" for a year after termination of the Subcontractor Agreement.  The Subcontractor Agreement, however, does not on its face limit Plaintiffs' ability to contract with Skylink's competitors.  It states only that Plaintiffs may not "perform the same services for [DirectTV], but may do so for any other clients not contracted with [Skylink]."  Subcontractor Agreement, at 13.  This fact, by itself, is not substantial evidence of an employment relationship. It is not uncommon for companies to protect against potential client usurpation by a subcontractor.

In sum, Plaintiffs offer no evidence outside of an unsupported statement in their brief that technicians were prevented from working for Skylink's direct competitors.  Inasmuch as the only

-14-

substantive limitation on Plaintiffs was the prohibition on work directly for DirectTV, this factor weighs in favor of a finding of independent contractor status.

### 6.     Services as an Integral Part of Skylink's Business

The last *Silk* factor "is the extent to which the service rendered by the worker is an integral part of the putative employee's business." *Schultz*, 466 F.3d at 308.  Generally, the more integral the work, the more likely the worker is an employee, not an independent contractor.  *See Herman*, 164 F. Supp. 2d at 677.

Most obviously, cable installation technicians are the lifeblood of Skylink.  The company does, after all, provide a contracting service to DirectTV principally to connect its subscribers to its satellite television and internet service.  Thus, this factor superficially contributes to the inference that Plaintiffs were employees.  However, other courts have found on similar facts that this factor alone cannot "alter the overall impression that . . . installers are economically independent." *Dole*, 729 F. Supp. at 77; *see also Herman*, 164 F. Supp. 2d at 677 (noting that, while "[i]nstallers were . . . integral to [the putative employer's business,] . . . one factor standing alone does not tip the balance towards a finding of 'employment' (internal quotation marks omitted)).  Accordingly, this factor alone does not shine the light away from the economic realities of the instant relationship.  Although the Court recognizes that courts have split on the issue of whether cable and satellite installers are independent contractors or employees under the FLSA,[9] on the facts put forth in the

---

[9] *Compare Freund v. Hi-Tech Satellite, Inc.*, No. 05-14097, 2006 U.S. App. LEXIS 13492 (11th Cir. Jul. 26, 2006) (affirming district court determination that installers were independent contractor)*; Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667, 671 (D. Md. 2000), *aff'd, Chao v. Mid-Atlantic Installation Servs., Inc.*, No. 00-2263, 2001 U.S. App. LEXIS 14804, at *3-4 (4th Cir. July 2, 2001) (finding installers were independent contractors); *Dole v. Amerilink Corp.*, 729 F. Supp. 73 (E.D. Mo. 1990) (finding installers were independent contractors); *with Lang v. DirectTV*, No. 10-1085, 2011 WL 2709886 (E.D. La. Jul.

pending motions for summary judgment, Plaintiffs' motion for summary judgment must be **DENIED**, and Skylink's motion for summary judgment must be **GRANTED**.

## B.    State Minimum Wage and Overtime Claims

Skylink argues that Plaintiffs' claims for unpaid overtime and minimum wages asserted under the WPCL are not legally cognizable for two reasons.  First, Skylink contends that it is exempt from coverage under the WPCL.  Second, it argues that the FSLA provides the exclusive remedy for Plaintiffs' claims.  The Court addresses each argument in turn.

### 1.    Applicability of WPCL to Skylink

In Count Three, Plaintiffs seek wages, liquidated damages, and interest for Skylink's alleged violations of the section of the WPCL which deals with minimum wage and overtime violations. *See* West Virginia Minimum Wage and Maximum Hours Law (the "Act"), W. Va. Code § 21-5C-1, *et seq.*   Skylink argues that it is exempt from coverage from this portion of the Act as more than eighty percent of its employees are covered by the FLSA.  As the Act pertinently provides:

> "[E]mployer" shall not include any individual, partnership, association, corporation, person or group of persons or similar unit if eighty percent of the persons employed by him are subject to any federal act relating to minimum wage, maximum hours and overtime compensation.

W. Va. Code § 21-5C-1(e).  Skylink claims that it has 48 employees in West Virginia, constituting more than eighty percent of its West Virginia workforce.

---

12, 2011) (finding material issue of fact as to whether installer was employee or independent contractor); *Keeton v. Time Warner Cable, Inc.*, No. 2:09-1085, 2011 WL 2618926 (S.D. Ohio Jul. 1, 2011) (same); *Parrilla v. Allcom Construction & Installation Services,* 2009 WL 2868432 (M.D. Fla. Aug. 31, 2009) (determining installer was employee at a bench trial); *Muller v. AM Broadband, LLC,* No. 07-60089, 2008 WL 708321 (S.D. Fla. Mar. 14, 2008) (finding material issue of fact as to whether installer was employee or independent contractor); *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313 (S.D. Fla. 2001) (finding material issue of fact as to whether installer was employee or independent contractor).

Plaintiffs do not adequately address this argument.  Nor do they offer any evidence rebutting Skylink's assertion.  Rather, they claim that Skylink only meets the eighty percent threshold because of its decision to "improperly" characterize its employees.  However, Plaintiffs Bare and Scruggs are effectively arguing that they *should* be treated as employees for purposes of the FLSA.  As of now, they are classified as independent contractors, and not covered by the FLSA's protections.  If Skylink meets the eighty percent threshold *before* the designation of Plaintiffs as employees, then logic would compel the conclusion that it would most certainly meet it afterwards.  Other courts in this district have refused summary judgment on the grounds that some employee classification disputes preclude pre-trial disposition under the WPCL.  *See Whiting v. W & R Corp.*, No. 2:03-0509, 2005 U.S. Dist. LEXIS 34008, at *8-9 (S.D. W. Va. April 19, 2005) (Goodwin, C.J.) (refusing to dismiss the plaintiffs' WPCL claims on the grounds that the defendant's argument that it was exempt from the coverage of § 21-5C-1 was premature because a genuine issue of fact existed with regard to the degree of control the defendant maintained over its other employees).  However, in this case, Plaintiffs argue that they are employees under the FLSA and should have been classified as such.  They provide no evidentiary support rebutting the allegation that over eighty percent of Skylink's employees are covered by the FLSA, and their legal theory would only cause that percentage to increase.  Therefore, summary judgment against their WCPL claims is appropriate.

### 2.      Exclusivity of the FLSA

In the alternative, Skylink also contends that Plaintiffs' state-law claims are based upon the same factual predicate as their FLSA claims.  It reasons that the FLSA provides Plaintiffs their exclusive right to recover, and that they may not circumvent the FLSA's remedies by asserting

equivalent state-law claims simultaneously with their federal FLSA claims.[10]

"It is well established that the FLSA, in its core areas of protection—minimum wage and overtime regulation—has a relatively narrow pre-emptive effect as it does not completely preempt state laws but only preempts them to the extent that they are less generous than the FLSA." *Hardesty v. Logan Reg'l Med. Ctr.*, 2:05-0437, 2006 U.S. Dist. LEXIS 22220, at *8 (S.D. W. Va. April 21, 2006) (citing 29 U.S.C. § 218(a)).

However, Plaintiffs do not disclaim relief provided by the FLSA in favor of their equivalent West Virginia state-law claims.   The FLSA "creates the right to overtime [and federal minimum wage pay] and provides the exclusive remedy for the recovery of such premium pay." *See Westfall v. Kendle Int'l, CPU LLC*, No. 1:05-cv-00118, 2007 U.S. Dist. LEXIS 11304, at *13-14 (N.D. W. Va. Feb. 15, 2007); *see also McMurray v. LRJ Rests., Inc.*, No. 4:10-cv-01435-JMC, 2011 U.S. Dist. LEXIS 7717, at *5 (D.S.C. Jan. 26, 2011) ("The FLSA provides the exclusive remedial scheme to address employees' rights to be paid a minimum wage for hours worked and to be paid overtime for all hours worked in excess of forty in a given workweek.").   It would appear, to some extent, that Plaintiffs are relying on the FLSA for their rights and have "invok[ed] state law only as the source of remedies for the alleged FLSA violations." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 193 (4th Cir. 2007).   That is, Plaintiffs contend that West Virginia law essentially entitles them to FLSA overtime and minimum wage compensation.   Importantly, Plaintiffs have not pointed to *greater* protections offered under West Virginia law that may invoke the FLSA savings clause.   *See* 29 U.S.C. § 218(a).   Where a state effectively substitutes its remedies for those provided by the FLSA,

---

[10] Plaintiffs attempt to certify this case under Rule 23 of the Federal Rules of Civil Procedure.  As a general matter, FLSA § 216(b) collective actions and class actions under Rule 23 are not necessarily incompatible.  *See Westfall*, 2007 U.S. Dist. LEXIS 11304, at *20.

those remedies cannot stand simultaneously with FLSA claims.  *See id. But see Martinez-Hernandez v. Butterball, LLC*, 578 F. Supp. 2d 816, 820 (E.D.N.C. 2008) (finding that the FLSA did not preempt the plaintiffs' claims where they relied upon North Carolina wage payment laws on the grounds that, although equivalent in substance, the claims held a foundation based solely on state law).  Thus, even if Plaintiffs' claims were properly brought under the Act, on the greater weight of the authority, the Court believes that Plaintiffs' claims are merely duplicative of their FLSA claims.  Therefore, Skylink's motion for summary judgment is **GRANTED** as to the state-law claims, and Plaintiffs' motion is likewise **DENIED**.  Plaintiffs' state-law claims are **DISMISSED**.

### C.    The Propriety of Plaintiff Joseph Young's Claims

Finally, Skylink contends that Plaintiff Young is an improper party to the instant putative collective and individual actions because he has not been classified as an independent contractor.  In addition, it contends that his individual claims are barred by the applicable statute of limitations.

First, Plaintiffs contend that, while Mr. Young may have been classified as a W-2 employee, he was still paid in violation of the FLSA's overtime and minimum wage laws.  Thus, they reason that his claim does not hinge on classification, but on the fact that Skylink failed to pay legal wages.  Upon review of the complaint, the Court construes Mr. Young's individual claims as having been brought separately as an "employee" under the FLSA.  To be sure, Plaintiffs have made their allegations very difficult to ascertain because they concede at the threshold of the complaint that this is an action for "misclassification."  However, their specific allegations include general assertions of FLSA minimum wage and overtime violations.

Secondly, Skylink contends that, even if Plaintiff Young's claims are properly stated, they are untimely inasmuch as they have been brought more than two years after the underlying causes

-19-

of action accrued.  *See* 29 U.S.C. § 255.  Section 255(a) of the FLSA permits claims to be filed

within two years after the cause of action accrued, absent evidence of a willful violation.  *Id.* §

255(a).  In the case of a willful violation, claims may be filed within three years.  *Id.*  Willfulness

is established where "an employer knew [its] conduct violated the FLSA, or showed reckless

disregard of such a determination," *see Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d

351, 358 (4th Cir. 2011), and the employee bears the burden of proof in making this showing, *id.*

Skylink claims that, despite assertions to the contrary, Plaintiffs have failed to include *any* evidence

of a willful FLSA violation.

Plaintiffs respond by noting that Skylink failed to pay Mr. Young overtime for roughly three

months of training at the beginning of his employment, and failed to reimburse money it had

improperly withheld from his pay, even in light of a specific request for corrections.   The

"wilfulness" standard may not be satisfied merely by a showing that the employer acted negligently

or knew that the FLSA may be "in the picture."  *See Schneider v. City of Springfield*, 102 F. Supp.

2d 827, 836 (S.D. Ohio 1999) (internal quotation marks omitted).  In that vein, Plaintiffs do not offer

any evidence showing that Skylink knew of, or recklessly disregarded, a violation of the FLSA's

provisions in withholding certain payments to Mr. Young.  Evidence that he told his supervisors he

was not paid overtime correctly does not permit a reasonable inference that they intentionally

disregarded the law.  There is no indication that Skylink had on prior occasions been cited for related

violations of the FLSA or otherwise had notice that it was not in compliance with the Act as to Mr.

Young's allegations.  *See Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991)

(suggesting that the such facts may provide competent evidence of FLSA violations).  Accordingly,

there is not enough to create a material dispute as to the willfulness issue for purposes of summary

judgment.  For that reason, Skylink's motion for summary judgment must be **GRANTED** on this issue, and Plaintiff Young's claims must be **DISMISSED** inasmuch as they were filed over two years after his last day of work.

## III.    Conclusion

For the foregoing reasons, the Court **GRANTS** Skylink's motion for summary judgment [Doc. 39], and **DENIES** the plaintiffs' motion for summary judgment. [Doc. 45]  Consistent with the dictate embodied in this Opinion, the Court hereby **DISMISSES** this action in its whole.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        December 2, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE